IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN FULKA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 1500 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| NORTHWESTERN MEDICAL FACULTY ) | |
| FOUNDATION, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Brian Fulka filed a two-count complaint against defendant Northwestern Medical Faculty Foundation, Inc. ("NMFF"), alleging that defendant violated his rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. (Count I) and retaliated against him for exercising his FMLA rights (Count II). Defendant has filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons discussed below, the court grants defendant's motion.

**FACTS**[1]

On April 26, 2004, defendant, a not-for-profit physician organization with 550 physicians and 1000 other health care professionals and administrative staff, hired plaintiff as the Employee Relations Manager, reporting directly to Richard Briasco ("Briasco"), the Director of Human Resources. During the selection process, Peter Iacobell ("Iacobell"), the Vice President of

---

[1]The following facts are taken from the parties' L.R. 56.1 Statements and accompanying exhibits.

Patient Services and Briasco's supervisor, directed Briasco to hire plaintiff and not to interview any other candidates for the position.

Plaintiff held a master's degree in labor and industrial relations and had worked from 1989 to 1997 in the field of human resources, representing management in union grievance proceedings, handling union organizing campaigns, and administering collective bargaining agreements. From 1997 to 2001, plaintiff worked as a mortgage broker, and from 2001 to 2003, he worked at Walgreen's as an assistant manager. Briasco did not believe that plaintiff was qualified for the position because he was not an expert on current employment law, had not worked in human resources for seven years, and gave "vague and unsophisticated" answers during his interview. When Briasco expressed his concerns to Iacobell, Iacobell insisted that Briasco hire plaintiff.

Plaintiff's responsibilities included: (1) managing Human Resources grievance procedures; (2) drafting Equal Employment Opportunity Commission ("EEOC") position statements in response to charges of discrimination; (3) coordinating witnesses for Illinois Department of Employment Security ("IDES") appeal hearings; (4) advising and counseling managers on the use of defendant's progressive discipline procedures; (5) reviewing and approving performance improvement plans; and (6) reviewing and approving FMLA paperwork.

Plaintiff became aware in his first 90 days of employment that Briasco had not wanted to hire him for the position, and the two developed a tense working relationship. In September of 2004, in his first performance evaluation, Briasco gave plaintiff a rating of 1.16 on a 2.00 scale, in the "meets expectations" range. In that review, Briasco mentioned "some clear miscommunications" with plaintiff and "areas requiring improvement, including the need to

discuss interpretion [sic] of HR policy." Briasco did, however, give plaintiff a raise and a five percent performance bonus.

In November of 2004, plaintiff was diagnosed with high blood pressure and acid reflux disease, which required continuing medical care and occasional absences from work. Defendant had a progressive absence plan that allowed plaintiff five absences before a verbal warning and six absences before a written warning. Plaintiff was absent four times between his diagnosis and April 26, 2005, after he had been employed by defendant for one year and therefore was eligible for FMLA leave.

After April 2005, plaintiff took FMLA leave for medical treatment, except for one unexcused absence on June 24, 2005. On July 12, 2005, Briasco issued plaintiff a verbal warning (documented in writing) dated July 6, 2005, as a reprimand for plaintiff's June 24 absence. The warning stated that any additional sick days incurred prior to November 24, 2005, would result in additional discipline.

On July 11, 2005, plaintiff had an unexpected absence, but he was unable to see a doctor to identify the absence as relating to his medical condition until July 13, 2005. Plaintiff then applied for FMLA leave on July 14, 2005. Plaintiff requested that his FMLA leave be retroactive to July 11, 2005, and extend until July 11, 2006.

On July 15, 2005, Briasco issued plaintiff a written warning for the sick day plaintiff took on July 11. Plaintiff then filed a grievance on July 26, 2005, to reverse the written warning, which Briasco himself evaluated. Briasco believed that plaintiff requested FMLA leave in response to the written warning. On August 1, 2005, defendant approved plaintiff's request for FMLA leave and made it retroactive to July 11, 2005. Briasco, however, believing that

3

defendant's policy was not to approve FMLA leave retroactively, decided that the approval of retroactive leave was inappropriate and changed plaintiff's FMLA leave period to begin on July 12, 2005, and end on July 12, 2006. Briasco backdated the document to August 1, 2006. After processing plaintiff's grievance, Briasco finally determined that FMLA leave could be extended retroactively to cover plaintiff's July 11 absence, and defendant removed the disciplinary action from plaintiff's file.

At some point during plaintiff's employment with defendant, Briasco and plaintiff had a meeting to discuss family and medical leave. A doctor and another employee of defendant had requested leave for the same medical condition, but the doctor requested a shorter leave period. Briasco joked to plaintiff, "I guess you heal faster when you are a doctor." Also at some point during plaintiff's employment, Briasco told plaintiff that he also suffered from acid reflux and treated his condition with a daily pill. He told plaintiff that he did not understand why plaintiff needed so many days off to treat his condition. Briasco did not, however, ever ask plaintiff to seek a second medical opinion regarding his condition.

On August 17, 2005, plaintiff received his annual evaluation. Briasco gave plaintiff a rating of 1.01 out of 2.00, in the "meets expectations" range, in the areas of: (1) mission and values; (2) managing the work environment; (3) active leadership; (4) quality; and (5) self-improvement. Briasco rated plaintiff as "below expectations" in the area of absences, stating, "Brian's unexcused absences are at an unacceptable level." The review also stated that plaintiff had "substantial lags in time between when work is assigned and when it is finished," and that plaintiff needed to "substantially improve his writing abilities."

After Briasco gave plaintiff his evaluation on August 17, 2005, three employees of defendant spoke to Briasco about their displeasure with plaintiff's job performance. Briasco then followed up with two division administrators, who told Briasco they had experienced "service issues" with plaintiff. One administrator stated that she did not receive sufficient guidance from plaintiff in finding new placements for employees whose jobs had been eliminated and that plaintiff "never had control over the process." She also stated that plaintiff did not return phone calls or voicemail messages and did not distribute one employee's resume as promised. Another administrator told Briasco that plaintiff was not sending 30-day notices regarding upcoming 90-day review deadlines, a task for which plaintiff was responsible, and that plaintiff had solicited a grievance about her from a former employee. Two other employees told Briasco that they were concerned with plaintiff's representation of defendant in a fact-finding conference with the Illinois Department of Human Rights.

On October 7, 2005, Briasco told plaintiff he was going to put him on a Performance Improvement Plan ("PIP"). During that meeting, Briasco found plaintiff to be "argumentative, disrespectful, and belligerent," a characterization plaintiff denies. In the fifteen work days following the meeting, plaintiff took seven days of FMLA leave.

On October 28, 2005, Briasco met with plaintiff again to issue the PIP and discuss it with plaintiff. The PIP articulated five performance standards defendant expected plaintiff to meet during the next 60 days: (1) performance meeting the standard of a "manager-level employee" and plaintiff's most recent performance evaluation; (2) timely and appropriate response to issues involving staff and management employees; (3) provision of advice consistent with established practices and guidelines; (4) submission of assignments in a timely, thorough, and high quality

manner; and (5) behavior that supports the attributes of cooperation, teamwork, and respect. The PIP stated that plaintiff and Briasco would have weekly meetings and that "[f]ailure to establish a pattern of performance that consistently aligns with these standards may be grounds for disciplinary action, up to and including termination of employment." The first four standards reflected the issues Briasco and plaintiff discussed on October 7. Plaintiff signed the PIP under objection, telling Briasco he believed the PIP to be general, vague, and non-specific.

On October 28, 2005, Briasco also sent plaintiff an e-mail reminding plaintiff that he was late in sending notices for performance evaluations. Briasco sent another e-mail on November 4, 2005, stating that the manner in which the notices were "currently being managed [was] unacceptable." On November 14, 2005, Briasco e-mailed plaintiff regarding formatting errors and content problems in a post-employment questionnaire plaintiff had sent him. In the e-mail, Briasco stated, "Finally, Brian – why did it take 6 weeks from the September meeting to complete this follow-up?"

According to plaintiff, after returning from FMLA leave in October 2005, plaintiff spoke with Anna Galindo, another employee, who stated that she heard Briasco questioning the validity of plaintiff's leave. Plaintiff again took FMLA leave on November 7, 2005, and from November 21 to 23, 2005. On November 23, 2005, Briasco e-mailed plaintiff to note the "highly unusual" pattern of plaintiff's absences falling on Fridays, Mondays, and the days before or after holidays and holiday weekends, "without exception." Plaintiff responded that he did not know why his leave fell on particular days, but stated that his absences on Mondays could be stress-related. Briasco never denied any FMLA leave applications or disciplined other employees for taking FMLA leave.

6

Between October 28, 2005, and December 29, 2005, plaintiff met with Briasco on a regular basis to evaluate plaintiff's performance. According to plaintiff, Briasco provided him with very little feedback during these meetings. Plaintiff believed his performance improved over this period and that he was meeting the expectations laid out in the PIP.

On December 29, 2005, Briasco met with plaintiff and gave him a letter of termination. The letter stated that defendant was terminating plaintiff because of his "inability to effectively and consistently perform the range of duties required for [his] position." The letter stated that plaintiff was being terminated for his poor leadership skills, his inability to complete assignments on time, and his poor writing skills.

## **DISCUSSION**

Under Fed. R. Civ. P. 56(c), a court should grant a motion for summary judgment if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of material fact. See Celotrex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

Count I

Plaintiff alleges in Count I that defendant violated his substantive rights under FMLA by denying him the leave he requested. To establish a violation of his rights under FMLA, plaintiff must show that: (1) he is an eligible employee, which means he worked for defendant for at least twelve months and worked at least 1250 hours for defendant in the twelve-month period preceding the request; (2) his employer is an entity covered by the statute; (3) plaintiff was entitled to leave under the statute because of a "serious health condition"; and (4) defendant was aware of plaintiff's need for leave but refused to provide it. 29 U.S.C. § 2611(4); Lozano v. Kay Mfg. Co., 2004 WL 1574247, *1 (N.D. Ill. July 12, 2004).

Defendant does not dispute that plaintiff meets the first three prongs of this test. As for the fourth prong, the only day of leave at issue is July 11, 2005; plaintiff concedes that defendant approved all other FMLA leave he requested. Plaintiff alleges that he was absent for medical reasons on July 11, 2005, and that on July 14, 2005, he requested intermittent FMLA leave retroactive to July 11, 2005 and extending for one year to July 11, 2006. According to plaintiff, defendant approved this retroactive request; Briasco then unilaterally revoked this decision and issued plaintiff a written warning, then changed his mind and rescinded that warning. Plaintiff alleges that despite the recision of the warning, the absence remains on his record as unexcused and contributed to Briasco's decision to terminate him.

Plaintiff provides no support for his assertion that his July 11 absence remains on his record as "unexcused" other than his own, self-serving statement of facts. Indeed, plaintiff himself acknowledges that when he missed work on July 11, he did not inform defendant that his absence was in connection with his medical condition, and he concedes that at that time, the

8

absence was, in fact, unexcused. Plaintiff also admits that defendant retroactively applied FMLA leave to his July 11 absence and rescinded the warning that had been issued in connection with his absence. Defendant therefore did not refuse plaintiff FMLA leave or otherwise interfere with his substantive rights under the statute. For these reasons, the court grants defendant's motion for summary judgment as to Count I.

Count II

Plaintiff alleges in Count II that defendant terminated him in retaliation for exercising his FMLA rights. The statute provides protection for employees whose employers discriminate against them for exercising their substantive rights. 29 U.S.C. § 2615(a)(1)-(2). Specifically, "[a]n employer is prohibited from discriminating against employees...who have used FMLA leave." 29 C.F.R. § 825.220(c); see also King v. Preferred Technical Group, 166 F.3d 887, 892 (7th Cir. 1999); Nowak v. Oce-USA, Inc., 2004 WL 2967432, *3 (N.D. Ill. Dec. 1, 2004).

*Direct Evidence*

Plaintiff may satisfy his burden of proof by offering direct evidence that he engaged in protected activity and as a result suffered an adverse employment action, or by offering indirect evidence under the burden-shifting approach established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff may present three types of circumstantial direct evidence that defendant retaliated against him for exercising his FMLA rights: (1) suspicious timing, ambiguous statements, behavior toward or comments directed at other employees within the protected group, and other similar "bits and pieces"; (2) evidence that similarly situated

9

employees who did not exercise their FMLA rights received "systematically better treatment"; or (3) evidence that plaintiff was qualified for the job in question but was replaced by an employee who did not exercise his or her FMLA rights and that the employer's stated reason for the differing treatment is pretextual. Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 2004).

In the instant case, plaintiff argues that the timing of his PIP and termination was suspicious, and that Briasco made ambiguous, anti-FMLA statements. According to plaintiff, Briasco placed him on a PIP and then terminated him because he took lawful FMLA leave. What plaintiff fails to recognize, however, is that he received a rating of "below expectations" in his August 18, 2005, performance review in the area of unexcused absences because he had accumulated five unexcused absences–not including the July 11, 2005 date for which he later received FMLA credit. Defendant had a policy of issuing warnings to employees who were absent on five or more days, and defendant merely enforced that policy when plaintiff accrued five unexcused absences.

Plaintiff also fails to address the fact that after his performance review, five employees of defendant approached Briasco regarding deficiencies in his performance, which led Briasco to put him on a PIP. Plaintiff also neglects to mention that his PIP and termination letter make no mention of FMLA leave or his attendance record. Further, plaintiff provides no support for his claims that his performance was adequate after the issuance of the PIP besides his own, self-serving statements, which are simply insufficient. See, e.g., Jackson v. E.G. Brach Corp., 176 F.3d 971, 986 ("an employee's self-serving statements about his ability...are insufficient to

contradict an employer's negative assessment of that ability"). Plaintiff fails to present any genuine issue of material fact with regard to the timing of his PIP and termination.

Plaintiff also argues that Briasco made ambiguous statements regarding his absences and otherwise displayed anti-FMLA behavior. Plaintiff's support for this assertion consists of the following: (1) Briasco questioned plaintiff's pattern of absences on Mondays and Fridays over a period of months; (2) Briasco told plaintiff that doctors "heal faster" than others; (3) Briasco told another employee that he questioned the validity of plaintiff's absences; and (4) Briasco told plaintiff that he controlled the same medical condition with a daily pill. Plaintiff's assertions are insufficient as direct evidence of retaliation. Briasco, as Director of Human Resources, is entitled to question an unusual pattern of absences. Plaintiff himself conceded in his deposition that Briasco was reasonable in asking an employee about the reason for a pattern of absenteeism. Further, Briasco's other statements, without further evidence that he denied or was hostile to FMLA leave, are not sufficient direct evidence of retaliation.

*Indirect Evidence*

Because plaintiff cannot present sufficient evidence of retaliation under the direct evidence framework, he must then establish retaliation under the indirect evidence method set out in <u>McDonnell Douglas</u>. Under this framework, plaintiff must show that: (1) he engaged in protected activity (here, the exercising of his FMLA right to medical leave); (2) he was subjected to an adverse employment action; (3) he was performing his job in a satisfactory manner; and (4) he was treated less favorably than any other similarly situated employee who did not engage in such protected activity. <u>Stone v. City of Indianapolis Public Utilities Div.</u>, 281 F.3d 640 (7th Cir.

11

2002).² If plaintiff can establish a prima facie case of retaliation in this manner, the burden then shifts to defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. "If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, [it] is entitled to summary judgment." Id. In some instances, as this court has recognized previously, the factual allegations do not fit neatly into these four elements of a prima facie case, and a rote application of these elements is inappropriate. See, e.g., Dinkins v. Varsity Contractors, Inc., 2005 WL 599979, *11 (N.D. Ill. March 10, 2005).

The parties agree that plaintiff engaged in a protected activity and was terminated. The parties are in disagreement as to the third and fourth prongs of the test. First, defendant argues that plaintiff has not identified a similarly situated employee who was treated more favorably. Plaintiff, on the contrary, appears to argue that all other employees of defendant were similarly situated and treated more favorably. As this court has previously stated, in circumstances such as these, plaintiff need not demonstrate that similarly situated employees were treated differently. See, e.g., Dinkins v. Varsity Contractors, Inc., 2005 WL 599979, *11 (N.D. Ill. March 10, 2005). Retaliation cases are not always relative; a comparison with other employees may not be necessary to discern whether defendant's actions were illegal. The court therefore finds that the disagreement regarding plaintiff's identification of similarly situated employees is not fatal to his prima facie case of retaliation.

Plaintiff's inability to demonstrate that he was meeting defendant's legitimate job expectations, however, does strike a fatal blow to his prima facie case. Plaintiff alleges that he

---

²The analysis of retaliation claims set out in Stone also applies to FMLA retaliation claims. Buie v. Quad/Graphics, Inc., 366 F.3d 496, 504 n.3 (7th Cir. 2004).

was performing his job in a satisfactory manner at the time of his termination, the relevant time period. See, e.g., Peele v. Country Mut. Ins. Co., 288 F.3d 319, 329 (7th Cir. 2002) ("In most cases, when a district court evaluates the question of whether an employee was meeting an employer's legitimate expectations, the issue is not the employee's past performance but 'whether the employee was performing well at the time of his termination.'").

In support of its assertion that plaintiff was not performing up to defendant's legitimate job expectations, defendant has presented the following evidence: (1) after plaintiff's August 2005 performance evaluation, five employees of defendant met with Briasco to discuss problems with plaintiff's job performance; (2) defendant placed plaintiff on a PIP in October 2005; (3) Briasco met with plaintiff on numerous occasions to discuss his performance and how to improve it; (4) Briasco documented plaintiff's performance deficiencies in writing and e-mail multiple times; and (5) Briasco explained the reasons for plaintiff's termination in his termination letter. Plaintiff's only support for his assertion that he was performing satisfactorily is his own statement that he was "performing up to expectations at the time he was fired." As discussed above, "[t]he employee's perception of [him]self...is not relevant. It is the perception of the decision maker which is relevant." Mills v. First Fed. S&L Ass'n, 83 F.3d 833, 843 (7th Cir. 1996), citing Karazanos v. Navistar Intern. Transp. Corp., 948 F.2d 332, 337-38 (7th Cir. 1991). Plaintiff cannot establish a genuine issue of material fact as to his job performance and therefore cannot establish a prima facie case of retaliation.

*Legitimate Non-Discriminatory Reason for Termination*

Even assuming plaintiff had met his prima facie case, he cannot survive defendant's motion for summary judgment because defendant has articulated a legitimate, non-discriminatory reason for plaintiff's termination. See, e.g., Johnson v. City of Fort Wayne, Ind., 91 F.3d 922, 938-39 (7th Cir. 1996). For defendant's reason for termination to be sufficient, "it need not be a good or sympathetic justification for what the employer did; it need only be non-discriminatory and...explain why the challenged action was taken." Papp v. Midwest Physician Group, Ltd., 2003 WL 21145703, *5 (N.D. Ill. May 16, 2003) (citing Mills, 83 F.3d at 845 n.8). Defendant has demonstrated support for its conclusion that plaintiff lacked necessary writing skills, fell behind on assignment deadlines, and failed to manage the performance evaluation process successfully. Defendant also states that after numerous meetings with his supervisor and after multiple recommendations on how to improve, plaintiff's performance continued to decline. Plaintiff has not rebutted, or even attempted to rebut, defendant's claims regarding his performance. The court therefore finds that even had plaintiff established a prima facie case of retaliation, defendant has articulated a legitimate, non-discriminatory reason for plaintiff's termination, and defendant's motion for summary judgment is granted.

## **CONCLUSION**

For the reasons discussed above, defendant's motion for summary judgment is granted.

**ENTER:** **August 14, 2007**

_____
**Robert W. Gettleman
United States District Judge**

14